ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CONSUELO S. WOODHEAD (Cal. State Bar No. 69653)
VINCE FARHAT (Cal. State Bar No. 183794)
Assistant United States Attorneys
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:  (213) 894-3987
Facsimile:  (213) 894-6269
E-mail:    consuelo.woodhead@usdoj.gov
           vince.farhat@usdoj.gov

Attorney for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 09-00087-GHK |
| Plaintiff, | **PLEA AGREEMENT FOR DEFENDANT INTERCARE HEALTH SYSTEMS, INC.** |
| v. | |
| INTERCARE HEALTH SYSTEMS, INC., d.b.a. City of Angels Medical Center, | |
| Defendant. | |

1.    This constitutes the plea agreement between Intercare Health Systems, Inc. ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

///

///

///

<u>PLEA</u>

2.    Defendant agrees to plead guilty to counts six and seven of the indictment in <u>United States v. Intercare Health Systems, Inc., d.b.a. City of Angels Medical Center, Robert Bourseau, and Dante Nicholson</u>, CR No. 09-00087-GHK.

<u>NATURE OF THE OFFENSE</u>

3.    In order for defendant to be guilty of counts six and seven, which charge violations of Title 42, United States Code, Section 1320a-7b(b)(2)(A), Payment of Illegal Remunerations for Patient Referrals, the following must be true: (1) defendant offered or paid remuneration in cash or kind to a person; (2) defendant paid the remuneration to induce the person to refer an individual for the furnishing of a service for which payment may be made under a Federal health care program; (3) defendant made the offer or payment knowingly and wilfully, that is, with knowledge of the law and the specific intent to violate it. Defendant admits that defendant is, in fact, guilty of these offenses as described in counts six and seven of the indictment.

<u>PENALTIES AND RESTITUTION</u>

4.    The statutory maximum sentence that the Court can impose on a corporate defendant for a violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) is: five years probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

5.    Therefore, the total maximum sentence for all offenses to which defendant is pleading guilty is: five years probation; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $800.

6.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses. Defendant agrees that, in return for

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the counts to which defendant is pleading guilty and may include losses arising from counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those counts and charges. The parties currently believe that the applicable amount of restitution is approximately $4,108,779, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The parties also agree that the defendant's resolution of the United States' claim in defendant's Bankruptcy Case (Case No. 2:09-bk-29121-SB) ("the Bankruptcy Case") will also satisfy the restitution requirements of this plea agreement. The United States' claim in the Bankruptcy Case is governed by the Stipulation Between Intercare Health Systems, Inc., the United States of America, Acting on Behalf of its Agency the United States Department of Health and Human Services, and the State of California (the "Stipulation"), approved by the Bankruptcy Court at the hearing held on March 23, 2010.

7.    Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, suspension or revocation of any license or status granted by government agencies and revocation of probation in another case. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

8.    Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below. It is not meant to be a

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

1  complete recitation of all facts relevant to the underlying criminal conduct or all

2  facts known to either party that relate to that conduct.

3       <u>Background</u>

4       On July 31, 2008, the government filed an indictment charging

5  defendants Rudra Sabaratnam ("Sabaratnam") and Estill Mitts ("Mitts") with

6  conspiracy to receive and pay kickbacks for patient referrals, and to commit

7  health care fraud, in violation of 18 U.S.C. §§ 371 and 1349, and payment and

8  receipt of kickbacks for patient referrals, in violation of 42 U.S.C. § 1320a-

9  7(b)(2)(A).  <u>See United States v. Sabaratnam,</u> CR 08-00904- GHK.  On

10  December 12, 2008, Sabaratnam pled guilty to counts three and six of the

11  indictment, which charge violations of Title 42, United States Code, Section

12  1320a-7b(b)(2)(A), Payment of Illegal Remunerations for Patient Referrals.

13       On January 29, 2009, the government filed an indictment charging

14  defendants Intercare Health Systems, Inc., d.b.a. City of Angels Medical Center

15  ("defendant Intercare"), Robert Bourseau ("Bourseau") and Dante Nicholson

16  ("Nicholson") with conspiracy to pay and receive kickbacks for patient

17  referrals, and to commit health care fraud, in violation of 18 U.S.C. §§ 371 and

18  1349, and payment of kickbacks for patient referrals, in violation of 42 U.S.C.

19  § 1320a-7(b)(2)(A).  <u>See United States v. Intercare Health  Systems, Inc., et al.,</u>

20  09-00087-GHK.  On March 18, 2009, Nicholson pled guilty to counts six and

21  seven of the indictment, which charge violations of Title 42, United States

22  Code, Section 1320a-7b(b)(2)(A), Payment of Illegal Remunerations for Patient

23  Referrals.  On June 16, 2009, Bourseau pled guilty to counts six and seven of

24  the indictment.

25       The criminal acts that Sabaratnam, Bourseau and Nicholson admitted in

26  pleading guilty were acts that they undertook as agents of defendant Intercare,

27  within the scope of their authority, to benefit defendant Intercare.

28       Defendant Intercare operated City of Angels Medical Center, a hospital

- 4 -

PLEA AGREEMENT FOR DEFENDANT<br>INTERCARE; CR NO. 09-00087-GHK

1    with an acute care facility located at 1711 West Temple Street, Los Angeles,
2    California ("City of Angels" or "the hospital").  From prior to 2004 until
3    November 18, 2008, Sabaratnam and Bourseau were owners and agents of
4    defendant Intercare and City of Angels.  From 2004 to on or about June 14,
5    2007, Sabaratnam was the Chief Executive Officer ("CEO") of City of Angels.
6    From prior to 2004 until November 18, 2008, Bourseau was the Chairman of
7    the Board of City of Angels.  During this time, Sabaratnam and Bourseau knew
8    that it was illegal to pay kickbacks for the referral of patients for health services
9    that may be paid for by Medicare or Medi-Cal, which are federal health care
10   programs for the elderly and indigent, respectively.
11        In engaging in the conduct described below, Sabaratnam and Bourseau
12   acted within the scope of their authority as agents of defendant Intercare and
13   with the intent to benefit defendant Intercare.
14        <u>The Kickback Scheme</u>
15        Beginning on or about August 20, 2004, and continuing to on or about
16   October 10, 2007, defendant Intercare engaged in a scheme to increase the
17   number of patients at City of Angels by paying kickbacks to so-called
18   marketers to refer Medicare and Medi-Cal beneficiaries for inpatient stays
19   regardless of medical need.  As part of the scheme, City of Angels entered into
20   sham "consultant" contracts with marketers to conceal the fact that City of
21   Angels was making illegal kickback payments to them for the referral of
22   Medicare and Medi-Cal beneficiaries.  Defendant Intercare paid the marketers
23   approximately $500 for each referred Medicare patient admitted to City of
24   Angels, and approximately $250 to $300 for each referred Medi-Cal patient
25   admitted to City of Angels.
26        <u>Dealings with Mitts</u>
27        As part of the scheme, on or about August 20, 2004, Sabaratnam, acting
28   as the agent of defendant Intercare, executed a "Consulting Services Contract"

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

1  between City of Angels and Metropolitan Healthcare LLC ("Metropolitan"), a
2  company owned and controlled by Mitts, a patient marketer. As Sabaratnam
3  and Bourseau well knew, Mitts operated a facility called the Assessment Center
4  ("the Assessment Center"), also known as 7th Street Christian Day Center,
5  located at 431 East Seventh Street, Los Angeles, California, in the area
6  commonly known as Skid Row. The Assessment Center was not a medical
7  clinic, but a site that Mitts used for the purpose of recruiting homeless Medicare
8  and Medi-Cal beneficiaries for referral to local hospitals, including City of
9  Angels. Mitts and others working for him, including Richard Massey
10 ("Massey"), would recruit homeless beneficiaries for in-patient hospital
11 admissions whether or not such hospitalizations were medically necessary. The
12 recruited beneficiaries would be taken to the Assessment Center where
13 Assessment Center staff who were not medical professionals would confirm
14 their status as Medicare or Medi-Cal beneficiaries, provide symptoms to justify
15 hospitalization, and arrange for their transportation to City of Angels where
16 they would be admitted, in many cases without their having been examined or
17 assessed by a physician.

18        Pursuant to the sham contracts, Mitts submitted monthly invoices to City
19 of Angels for payment for the patients he referred. These invoices were
20 accompanied by false monthly "work reports" designed, as Sabaratnam and
21 Bourseau knew and intended, to conceal the fact that payments were being
22 made for patient referrals. Mitts also submitted to City of Angels monthly lists
23 of the Medicare and Medi-Cal patients representing the actual basis for the
24 invoices. Nicholson, an employee and agent of defendant Intercare, reviewed
25 these lists of recruited homeless beneficiaries against City of Angels' admission
26 records, calculated the amount owed to Mitts based on the number of patients
27 admitted, and submitted check requests to Sabaratnam and Bourseau for
28 approval and payment. As Sabaratnam and Bourseau knew and intended, City

- 6 -                    PLEA AGREEMENT FOR DEFENDANT
                        INTERCARE; CR NO. 09-00087-GHK

1   of Angels reimbursed Mitts for the recruited homeless beneficiaries by issuing

2   checks payable to companies that Mitts owned and controlled, including

3   Metropolitan and Wilshire Healthcare Holdings LLC ("Wilshire").

4           As Sabaratnam and Bourseau knew and intended, City of Angels billed

5   Medicare and Medi-Cal for in-patient services to the recruited beneficiaries,

6   including those for whom in-patient hospitalization was not medically

7   necessary.

8           On or about November 15, 2006, in furtherance of the scheme, Bourseau,

9   acting as the agent of defendant Intercare, knowingly, willfully, and with

10  knowledge that it was unlawful to do so, caused to be issued a check (#5794),

11  drawn on defendant Intercare's bank account and signed by Bourseau, payable

12  to Wilshire in the amount of $10,905, representing payment for the referral of

13  homeless beneficiaries to City of Angels.

14          Separate Dealings with Massey

15          In October 2006, City of Angels entered into a separate kickback

16  arrangement with Massey, who had been working for Mitts.  As part of this

17  arrangement, and at the direction of Sabaratnam and Bourseau acting as agents

18  of defendant Intercare, Massey formed a company called Rolls-Cartier LLC.

19  Defendant Intercare paid Massey for the referral of Medicare and Medi-Cal

20  beneficiaries by having checks issued to Rolls-Cartier LLC.  This separate

21  kickback arrangement with Massey continued until approximately March 2007.

22          In furtherance of the scheme, Massey submitted monthly lists of recruited

23  homeless beneficiaries to City of Angels.  Nicholson reviewed the lists against

24  City of Angels' admission records, calculated the amount owed to Massey

25  based on the number of patients admitted, and submitted check requests to

26  Sabaratnam and Bourseau for approval and payment.  As Sabaratnam and

27  Bourseau knew and intended, City of Angels reimbursed Massey for the

28  recruited homeless beneficiaries by issuing checks payable to Roll-Cartier,

LLC.

On or about November 29, 2006, in furtherance of the scheme, Bourseau, acting as the agent of defendant Intercare, knowingly, willfully, and with knowledge that it was unlawful to do so, caused to be issued a check (#5877), drawn on defendant Intercare's bank account and signed by Bourseau, payable to Rolls-Cartier LLC in the amount of $8,400, representing payment for the referral of homeless beneficiaries to City of Angels.

Total Kickback Payments and Impact on Medicare

The total amount of illegal remunerations for patient referrals that Sabaratnam and Bourseau, acting as agents of defendant Intercare, paid and caused to be paid during the course of the scheme was approximately $416,382 to Mitts and $70,000 to Massey, for a combined total of approximately $486,382.

Medicare paid City of Angels approximately $2,772,403 for patients referred by Mitts and Massey during the course of the scheme, and Medi-Cal paid the hospital approximately $1,336,376. Thus, the total paid by the two programs together was $4,108,779.

WAIVER OF CONSTITUTIONAL RIGHTS

9.    By pleading guilty, defendant gives up the following rights:

      a)    The right to persist in a plea of not guilty.

      b)    The right to a speedy and public trial by jury.

      c)    The right to the assistance of legal counsel at trial. (In this regard, defendant understands that, despite its pleas of guilty, it retains the right to be represented by counsel at every other stage of the proceeding.)

      d)    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

e)      The right to confront and cross-examine witnesses against defendant.

f)      The right, if defendant wished, to present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

10.     Defendant understands that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), in determining defendant's sentence. Defendant further understands that the Sentencing Guidelines are advisory only, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

11.     Defendant and the USAO agree and stipulate to the following applicable Sentencing Guidelines factors:

a)      Restitution order in the amount of $4,108,779, pursuant to U.S.S.G. § 8B1.1(a)(1), but subject to the agreement outlined in paragraph 6, *supra*, describing the Stipulation.

b)      There is no agreement as to a fine pursuant to U.S.S.G. § 8C2.4(a)(3). The parties note that the United States has a $10,000,000 claim in the Bankruptcy Case against defendant's estate based on the events set forth in paragraph 8, *supra*, as well as an additional claim of $17,825,550.61, which makes the United States the defendant's largest creditor, and the likelihood of

any money remaining in defendant's estate after the United States' claims have been resolved is remote.  Accordingly, there is no agreement between the parties that the defendant will have the ability to pay a fine after the conclusion of the Bankruptcy Case, and the parties believe that the interests of the United States will likely be satisfied in this case without the Court imposing a fine.  In the event the Court determines that a fine is necessary, however, the parties agree that, before imposition, the fine must be submitted to the Bankruptcy Court for review and approval to protect the interest of the defendant's creditors in the Bankruptcy Case.

        c)     Five years probation with a condition requiring full payment of restitution, pursuant to U.S.S.G. §§ 8B1.1(a)(2), 8D1.1(a)(1)-(2) and 8D1.3(b).  Defendant and the USAO reserve the right to argue that additional specific Sentencing Guidelines factors are appropriate.

12.    There is no agreement as to defendant's culpability score under U.S.S.G. § 8C2.5, including prior history, and no agreement as to the minimum and maximum multipliers under U.S.S.G. § 8C2.6.

13.    The stipulations in this agreement do not bind either the United States Probation Office or the Court.  Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.

## DEFENDANT'S OBLIGATIONS

14.    Defendant agrees that it will:

        a)     Plead guilty as set forth in this agreement.

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

b)     Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c)     Not knowingly and willfully fail to:  (i) appear through counsel for all court appearances, (ii) obey all conditions of any bond, and (iii) obey any other ongoing court order in this matter.

d)     Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e)     Not knowingly and willfully fail to be truthful at all times with the U.S. Probation Office and the Court.

f)     Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

## THE USAO'S OBLIGATIONS

15.    If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a)     To abide by all sentencing stipulations contained in this agreement.

b)     At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

c)     Not to further prosecute defendant for violations of Title 18, United States Code, Section 1347 or 42 U.S.C. § 1320a-7b(b)(2)(A) arising out

- 11 -

1    of defendant's conduct described in the stipulated factual basis set forth in

2    paragraph 8 above. Defendant understands that the USAO is free to prosecute

3    defendant for any other unlawful past conduct or any unlawful conduct that

4    occurs after the date of this agreement. Defendant agrees that at the time of

5    sentencing the Court may consider the uncharged conduct in determining the

6    applicable Sentencing Guidelines range, where the sentence should fall within

7    that range, the propriety and extent of any departure from that range, and the

8    determination of the sentence to be imposed after consideration of the

9    sentencing guidelines and all other relevant factors.

## BREACH OF AGREEMENT

11    16.    If defendant, at any time after the execution of this agreement,

12    knowingly violates or fails to perform any of defendant's agreements or

13    obligations under this agreement ("a breach"), the USAO may declare this

14    agreement breached. If the USAO declares this agreement breached at any time

15    following its execution, and the Court finds such a breach to have occurred,

16    then: (a) if defendant has previously entered guilty pleas, defendant will not be

17    able to withdraw the guilty pleas, and (b) the USAO will be relieved of all of its

18    obligations under this agreement.

19    17.    Following the Court's finding of a knowing and willful breach of

20    this agreement by defendant, should the USAO elect to pursue any charge that

21    was either dismissed or not filed as a result of this agreement, then:

22    a)    Defendant agrees that any applicable statute of limitations is

23    tolled between the date of defendant's signing of this agreement and the

24    commencement of any such prosecution or action.

25    b)    Defendant gives up all defenses based on the statute of

26    limitations, any claim of pre-indictment delay, or any speedy trial claim with

27    respect to any such prosecution, except to the extent that such defenses existed

28    as of the date of defendant's signing this agreement.

PLEA AGREEMENT FOR DEFENDANT
INTERCARE; CR NO. 09-00087-GHK

1          c)    Defendant agrees that:  (i) any statements made by

2 defendant's agent, under oath, at the guilty plea hearing (if such a hearing

3 occurred prior to the breach); (ii) the stipulated factual basis statement in this

4 agreement; and (iii) any evidence derived from such statements, are admissible

5 against defendant in any such prosecution of defendant, and defendant shall

6 assert no claim under the United States Constitution, any statute, Rule 410 of

7 the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

8 Procedure, or any other federal rule, that the statements or any evidence derived

9 from any statements should be suppressed or are inadmissible.

10 <u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

11       18.    Defendant gives up the right to appeal any sentence imposed by the

12 Court, including any order of restitution, and the manner in which the sentence

13 is determined, provided that the sentence is within the statutory maximum

14 specified above and is constitutional.  Defendant also gives up any right to

15 bring a post-conviction collateral attack on the convictions or sentence,

16 including any order of restitution, except a post-conviction collateral attack

17 based on a claim of ineffective assistance of counsel, a claim of newly

18 discovered evidence, or an explicitly retroactive change in the applicable

19 Sentencing Guidelines, sentencing statutes, or statutes of conviction.

20       19.    The USAO gives up its right to appeal the sentence, provided that

21 the sentence is within the statutory maximum specified above and is

22 constitutional.

23              <u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

24       20.    Defendant agrees that if any count of conviction is vacated,

25 reversed, or set aside, the USAO may:  (a) ask the Court to resentence

26 defendant on any remaining count of conviction, with both the USAO and

27 defendant being released from any stipulations regarding sentencing contained

28 in this agreement, (b) ask the Court to void the entire plea agreement and vacate

- 13 -      PLEA AGREEMENT FOR DEFENDANT
                              INTERCARE; CR NO. 09-00087-GHK

1  defendant's guilty plea on any remaining count of conviction, with both the
2  USAO and defendant being released from all of their obligations under this
3  agreement, or (c) leave defendant's remaining conviction, sentence, and plea
4  agreement intact. Defendant agrees that the choice among these three options
5  rests in the exclusive discretion of the USAO.

6                              COURT NOT A PARTY
7        21.   The Court is not a party to this agreement and need not accept any
8  of the USAO's sentencing recommendations or the parties' stipulations. Even
9  if the Court ignores any sentencing recommendation, finds facts or reaches
10  conclusions different from any stipulation, and/or imposes any sentence up to
11  the maximum established by statute, defendant cannot, for that reason,
12  withdraw defendant's guilty pleas, and defendant will remain bound to fulfill
13  all defendant's obligations under this agreement. No one – not the prosecutor,
14  defendant's attorney, or the Court – can make a binding prediction or promise
15  regarding the sentence defendant will receive, except that it will be within the
16  statutory maximum.

17                          NO ADDITIONAL AGREEMENTS
18        22.   Except as set forth herein, there are no promises, understandings or
19  agreements between the USAO and defendant or defendant's counsel. Nor may
20  any additional agreement, understanding or condition be entered into unless in a
21  writing signed by all parties or on the record in court.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

                                    - 14 -        PLEA AGREEMENT FOR DEFENDANT
                                                  INTERCARE; CR NO. 09-00087-GHK

1   <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2      23.   The parties agree and stipulate that this Agreement will be

3   considered part of the record of defendant's guilty plea hearing as if the entire

4   Agreement had been read into the record of the proceeding.

5      This agreement is effective upon signature by defendant and an Assistant

6   United States Attorney.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10   ANDRÉ BIROTTE JR.
United States Attorney

11

12   VINCE FARHAT              7-27-10
Assistant United States Attorney      Date

13

14   ///

15   ///

16   ///

17      I have read this agreement and carefully discussed every part of it with

18   the attorney representing defendant Intercare Health Systems, Inc. and with my

19   own attorney.  I understand the terms of this agreement, and, subject to

20   obtaining the consent of the Bankruptcy Court presiding over the Bankruptcy

21   Case, a draft copy of which is attached as Exhibit A, and an executed copy of

22   which will be attached as Exhibit B, I voluntarily agree to those terms on behalf

23   of defendant.  The attorney for defendant Intercare has advised Intercare Health

24   Systems, Inc. of its rights, of possible defenses, of the sentencing factors set

25   forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions,

26   and of the consequences of entering into this agreement.  No promises or

27   inducements have been given to me or Intercare Health Systems, Inc. other than

28   those contained in this agreement.  No one has threatened or forced me or

1   Intercare Health Systems, Inc. in any way to enter into this agreement.  Finally,

2   Intercare Health Systems, Inc. and I are satisfied with the representation of our

3   attorneys in this matter.

4

5   RUDRA SABARATNAM                                        7/23/10

6   Court Approved Authorized Agent for                    Date
    Defendant Intercare Health Systems, Inc.

7

8        I am the attorney for defendant Intercare Health Systems, Inc.  I have

9   carefully discussed every part of this agreement with my client.  Further, I have

10  fully advised my client of its rights, of possible defenses, of the sentencing

11  factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines

12  provisions, and of the consequences of entering into this agreement.  To my

13  knowledge, my client's decision to enter into this agreement is an informed and

14  voluntary one.

15

16  STEVE OLSON                                             Date

17  Counsel for Defendant
    Intercare Health Systems, Inc.

18

19       I am the attorney for Rudra Sabaratnam.  I have carefully discussed every

20  part of this agreement with my client.  Further, I have fully advised my client of

21  the rights of Intercare Health Systems, Inc., of possible defenses for Intercare

22  Health Systems, Inc., and of the consequences to Intercare Health Systems, Inc.

23  of entering into this agreement.  To my knowledge, my client's decision to

24  enter into this agreement on behalf of Intercare Health Systems, Inc. is an

25  informed and voluntary one.

26

27  JOHN VANDEVELDE                                         Date

28  Counsel for Rudra Sabaratnam

                            - 16 -        PLEA AGREEMENT FOR DEFENDANT
                                          INTERCARE; CR NO. 09-00087-GHK

1    Intercare Health Systems, Inc. in any way to enter into this agreement. Finally,

2    Intercare Health Systems, Inc. and I are satisfied with the representation of our

3    attorneys in this matter.

4

5    _____        _____
     RUDRA SABARATNAM                          Date
6    Court Approved Authorized Agent for
     Defendant Intercare Health Systems, Inc.

7

8        I am the attorney for defendant Intercare Health Systems, Inc. I have

9    carefully discussed every part of this agreement with my client. Further, I have

10   fully advised my client of its rights, of possible defenses, of the sentencing

11   factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines

12   provisions, and of the consequences of entering into this agreement. To my

13   knowledge, my client's decision to enter into this agreement is an informed and

14   voluntary one.

15   _____        7/23/10
16   STEVE OLSON                               Date
     Counsel for Defendant
17   Intercare Health Systems, Inc.

18

19       I am the attorney for Rudra Sabaratnam. I have carefully discussed every

20   part of this agreement with my client. Further, I have fully advised my client of

21   the rights of Intercare Health Systems, Inc., of possible defenses for Intercare

22   Health Systems, Inc., and of the consequences to Intercare Health Systems, Inc.

23   of entering into this agreement. To my knowledge, my client's decision to

24   enter into this agreement on behalf of Intercare Health Systems, Inc. is an

25   informed and voluntary one.

26

27   _____        _____
     JOHN VANDEVELDE                          Date
28   Counsel for Rudra Sabaratnam

                              - 16 -        PLEA AGREEMENT FOR DEFENDANT
                                            INTERCARE; CR NO. 09-00087-GHK

Intercare Health Systems, Inc. in any way to enter into this agreement.  Finally,
Intercare Health Systems, Inc. and I are satisfied with the representation of our
attorneys in this matter.

_____     _____
RUDRA SABARATNAM                                        Date
Court Approved Authorized Agent for
Defendant Intercare Health Systems, Inc.


        I am the attorney for defendant Intercare Health Systems, Inc.  I have
carefully discussed every part of this agreement with my client.  Further, I have
fully advised my client of its rights, of possible defenses, of the sentencing
factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.  To my
knowledge, my client's decision to enter into this agreement is an informed and
voluntary one.


_____     _____
STEVE OLSON                                                 Date
Counsel for Defendant
Intercare Health Systems, Inc.


        I am the attorney for Rudra Sabaratnam.  I have carefully discussed every
part of this agreement with my client.  Further, I have fully advised my client of
the rights of Intercare Health Systems, Inc., of possible defenses for Intercare
Health Systems, Inc., and of the consequences to Intercare Health Systems, Inc.
of entering into this agreement.  To my knowledge, my client's decision to
enter into this agreement on behalf of Intercare Health Systems, Inc. is an
informed and voluntary one.

_____     _____
JOHN VANDEVELDE                                         Date  7/23/10
Counsel for Rudra Sabaratnam

                              - 16 -            PLEA AGREEMENT FOR DEFENDANT
                                                INTERCARE; CR NO. 09-00087-GHK